## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BLUE MAKO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:06CV00222 |
| | ) | |
| JIM MINIDIS, LYNN MINIDIS, RED | ) | |
| BRICK PIZZA WORLDWIDE, INC., a | ) | |
| California corporation, RED BRICK | ) | |
| PIZZA, INC., a California | ) | |
| corporation, DON DRYSDALE, | ) | |
| MARY DOUSETTE and MICHAEL MARSH, | ) | |
| | ) | |
| Defendants. | ) | |

### RECOMMENDATION OF MAGISTRATE JUDGE ELIASON

Plaintiff Blue Mako, Inc. is a North Carolina corporation which first filed this action in state court against the individual and corporate Defendants, who are all residents of California. The action arises out of the purchase by Plaintiff of a Red Brick Pizza restaurant franchise. Plaintiff alleges fraud, negligence, breach of fiduciary duties, etc., except for Defendants Mary Dousette and Michael Marsh, who have been named solely for the purpose of an interpleader action. (They shall hereinafter be designated as the Interpleader Defendants.) The other Defendants (those not including the Interpleader Defendants) (hereinafter "Defendants,") removed the state court action to this Court based on diversity of citizenship jurisdiction. Plaintiff has filed a motion to remand the case back to state court pursuant to 28 U.S.C. § 1447. Defendants have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction or, in the

alternative, to transfer the case to the Central District of California pursuant to 28 U.S.C. § 1404(a).

## History, Facts and Allegations of the Parties

Defendants in this case include Red Brick Pizza Worldwide, Inc. (RBPW). It is a closely held corporation by Defendants Jim and Lynn Minidis. Its business is the establishment and operation of franchise outlets with respect to pizza and other food. Defendant Red Brick Pizza, Inc. (RBP, Inc.) is a closely held California corporation owned by the Minidises and has approximately ten stores in California. Jim and Lynn Minidis are residents of California and are the President and Vice President and Treasurer, respectively, of the RBPW corporation. Defendant Don Drysdale is a citizen of California and a licensed California attorney, but he is not licensed to practice law in North Carolina.

The apparent impetus for the instant lawsuit arose when Plaintiff learned that the Minidises had been sued in California by the Interpleader Defendants in an action which may have involved, among other things, ownership of the RBPW trademark. In April 2005, a jury returned a verdict against the Minidises, and awarded damages of $6 million. After that verdict, the Interpleader Defendants evidently notified Plaintiff that they were entitled to any royalties due RBPW. This caused Plaintiff to have concern over the validity of its franchise and to re-examine statements made by Defendants or the failure to provide information. As a result, it filed an action nearly identical to this one in the Superior Court of California on July 8, 2005. However, on October 11, 2005, the

-2-

Interpleader Defendants' verdict in the California court was set aside. On December 1, 2005, they appealed the order setting aside the verdict. The appeal has not been resolved as of this date. Prior to that time, and on October 17, 2005, Plaintiff in his California action dismissed the Interpleader Defendants from that action and, on February 7, 2006, dismissed the entire action against the other defendants, which resulted in the dismissal of the action. It then filed this action.

In the instant action, Plaintiff makes the conclusory contention that RBPW and the Minidises, along with RBP, Inc., are alter egos of one another. There are no facts set out in support of this conclusory claim. The closest allegation concerning this matter is paragraph 27 of the complaint which sets out that on information and belief that RBPW, at the direction of the Minidises, paid most all of the monies received by Plaintiff to RBP, Inc. or the Minidises personally, and left RBPW without sufficient capitalization to promote the franchise brand. It is clear from the affidavits presented by the parties that RBP, Inc. has no connection or contacts with North Carolina.

Defendant RBPW does have some connection with North Carolina as a result of its sale of a franchise to Plaintiff. On December 11, 2001, Plaintiff entered into a franchise agreement with RBPW. There were negotiations prior to that time. The Minidises had contacts with North Carolina in regard to setting up and maintaining the North Carolina franchise in their capacity as officers of RBPW. However, the only connections or contacts RBPW

-3-

and the Minidises have with North Carolina arise out of setting up and maintaining Plaintiff's franchise which is the subject of this lawsuit.

Defendant Drysdale's only connection with the lawsuit arises out of his rendering legal services for Plaintiff. In that regard, Plaintiff's complaint and affidavit alleges that in November 2002, Plaintiff retained Drysdale to represent him with respect to all legal matters regarding RBPW and the franchise agreement. As a result, Plaintiff contends that Drysdale should have informed Plaintiff of the Interpleader Defendants' action against the Minidises in California. Drysdale's Affidavit, however, establishes that he is a California citizen and resident who only contracted with Plaintiff with respect to a single transaction on a one time basis in adapting the franchise offering circular so that it could be used by Plaintiff. This transaction occurred on November 25, 2002 and was shortly completed and all payments made by March 3, 2003.

The Interpleader Defendants have not filed an answer or other pleading in this action. There has been no motion to hold them in default or otherwise dismiss them. The facts concerning whether Defendants have sufficient contacts with North Carolina so that this Court has personal jurisdiction over them are disputed in some respects. The dispute concerning Attorney Drysdale has already been set out. The dispute concerning whether this Court has personal jurisdiction over the Minidises and RBPW is as follows. First, Plaintiff states that Defendant Jim Minidis had telephone

-4-

conversations with Britt Weaver, the President of Blue Mako, in August 2001 with respect to Jim Minidis offering a Red Brick Pizza franchise. As a result, on or about September 24 and November 13, 2001, Weaver flew to California and talked with Defendant Jim Minidis. Representations were allegedly made which ultimately became the subject of this lawsuit. On December 11, 2001, Plaintiff signed the Master Franchise Agreement papers, which were returned to California for signing by the Minidises, and Plaintiff paid a franchising fee of $25,000.00.

Weaver, in his affidavit on behalf of Plaintiff, states that after the signing, Jim Minidis traveled to North Carolina and during that time made the representations contained in paragraph 30 of the first cause of action, which allegedly were not true based on the contentions set out in paragraph 31 of the complaint. Plaintiff also states that since entering into the contract, Weaver received numerous telephone calls, e-mails, and letters from the Minidis Defendants who failed to tell him about the pending lawsuit brought against them by the Interpleader Defendants. Weaver also states that they made other false representations referred to in the complaint without identifying them. Weaver relates that after he filed the nearly identical lawsuit in California against Defendants in July 2005 and from then until December 2005, he did not hear from Mr. Minidis, but thereafter received telephone calls, e-mails, and letters addressed to him in California from both of the Minidises. He also states that the Minidises sent an agent to Plaintiff's pizza stores in December 2005 and February 2006.

-5-

## Plaintiff's Motion to Remand Case to State Court

Plaintiff seeks to have this case remanded to state court because the Interpleader Defendants did not sign the Notice of Removal. Section 1446(a)&(b) of Title 28 of the United States Code requires the filing of notice of removal papers within thirty days after service by the defendants. By judicial interpretation, this means that all defendants in the state court action must timely consent to the removal and the notice must be signed by all of them. 14C Charles Alan Wright, et al., Federal Practice and Procedure § 3731 (1998); Brodar v. McKinney, 378 F. Supp. 2d 634, 636 (M.D.N.C. 2005). However, the treatise writers also point out "a very important judicially recognized exception is that nominal or formal parties may be disregarded for purposes of the unanimity rule." 14C Wright, et al., supra § 3731, at 270-271.

The nominal or formal party exception to the rule of unanimity has not yet been defined in the Fourth Circuit. Allen v. Monsanto Co., 396 F. Supp. 2d 728, 732 (S.D.W. Va. 2005). However, there appears to be broad consensus concerning the type of situations which would be covered by the exception. They include whether the defendant is a defunct corporation without assets or corporations joined solely on account of the parent-subsidiary relationship. Mayes v. Moore, 367 F. Supp. 2d 919, 921-922 (M.D.N.C. 2005). A nominal party can encompass defendants who are mere stakeholders or depositories for property. Allen, 396 F. Supp. 2d at 733. Another situation involves cases where there is no likely possibility that a plaintiff can establish a cause of action against a defendant.

-6-

<u>Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation</u>, 925 F.2d 866, 871 (5th Cir. 1991). This situation can include one where the party was not involved in the activities charged in the complaint, have already settled with the plaintiff, have only been named as John Doe defendants, or where there is no basis for imputing liability, . <u>Mayes</u>, 367 F. Supp. 2d at 921-922; <u>Allen</u>, 396 F. Supp. 2d at 733. One test a court can consult in determining whether a party should be denominated as nominal is whether the court would be able to enter a final judgment in favor of the plaintiff in the absence of the defendant, without otherwise materially circumscribing the relief due. <u>Mayes</u>, 367 F. Supp. 2d at 922. In all events, the burden is on the party seeking to preserve removal to show that the requirements for removal have been met. 14C Wright, <u>et al</u>., <u>supra</u> § 3739, at 424, 470.

In the instant action, Defendants allege that the failure to obtain the signature of the Interpleader Defendants Mary Dousette and Michael Marsh on the removal petition does not vitiate the validity of the removal. They contend that Plaintiff's use of a "purported" interpleader action amounts to a sham and, therefore, Dousette and Marsh are nominal parties. In effect, Defendants contend that Plaintiff has no reasonable basis for expecting to have a judgment include the Interpleader Defendants and that their absence from this suit would not prejudice Plaintiff.

The complaint, in the Fifth Cause of Action, does assert an interpleader action. Plaintiff paints itself as the stakeholder of royalties nominally payable to RBPW under the distributorship

-7-

agreement.  The other claimants to the funds are alleged to be
Dousette and Marsh, who are said to have a legitimate basis to the
royalty payments because they may be owners of the trademark and
property interest pertaining to RBPW.  It should be noted that this
action is apparently brought under North Carolina interpleader law.
<u>See</u> N.C.G.S. § 1A-1, Rule 22.

　　　While the complaint makes the conclusory allegation that
Dousette's and Marsh's claims are adverse and conflicting with
Defendant RBPW's claims, it fails to adduce any facts supporting
this allegation.  As indicated previously, Dousette and Marsh did
obtain a verdict against Jim and Lynn Minidis in 2005, but that
verdict has been set aside.  Although the matter is now on appeal,
no decision has been rendered.  Moreover, Defendants point out that
this verdict, in any event, never imposed any obligation on RBPW
which, in fact, was never a party to that action.

　　　For a number of reasons, Dousette and Marsh must be considered
no more that nominal defendants whose signatures were not necessary
in order to remove this action.  The first reason involves the very
tenuous, if not ephemeral, nature of Plaintiff's interpleader
action.

　　　Plaintiff seeks to portray itself as an uninvolved stakeholder
in the controversy.  However, it is bringing a separate cause of
action against RBPW and so Plaintiff is not simply an uninvolved or
disinterested stakeholder.  Nevertheless, it is not clear that
Plaintiff may not maintain a state law interpleader action.

-8-

Under North Carolina Rules of Civil Procedure, N.C.G.S. § 1A-1, Rule 22, North Carolina's interpleader rules have been rephrased so as to liberally grant interpleader. The Comment to that rule states that the liberalization is such that Pomeroy's four limitations on the use of interpleader have been repudiated. It cites to <u>Simon v. Raleigh City Bd. of Ed. By and Through Bd. of Trustees</u>, 258 N.C. 381, 128 S.E.2d 785 (1963). In that case, the North Carolina Supreme Court recognized that the statutory interpleader (as of the time of the decision) was not exactly the same as the common law interpleader, which contained the four limitations set out in the treatise, John Norton Pomeroy, <u>Equity Jurisprudence</u> (5th Ed. 1941). One of those limitations required that the plaintiff not have a claim in the subject matter nor any independent liability to either of the claimants. The court held that in North Carolina, while an individual might not bring an interpleader "action," one might be able to bring a suit which was denominated a "bill in the nature of interpleader." In such a bill, contrary to one of Pomeroy's four limitations, a plaintiff may disclose an interest in the subject matter. Thus, the fact that Plaintiff and RBPW may have other claims against each other, aside from the interpleader franchise fees, would not necessarily bar an interpleader action or bill.

Defendants next argue that Dousette and Marsh do not have any claim against RBPW, but only against the two Minidises. Plaintiff does not show otherwise. Even with respect to federal interpleader actions, it has been stated that the stakeholder must have a

-9-

legitimate fear of having two or more claims to the same property. 7 Charles Alan Wright, et al., Federal Practice and Procedure § 1704, at 542 (2002). That does not appear to be the situation in the instant case. Moreover, to the extent that the interpleader action were deemed to have any future viability, the Court should consider dismissing or staying it if there is another action pending in another court that could obviate the need for employing the interpleader remedy. Id. § 1709, at 576. That is also the situation in the instant case. Not only does the Dousette and Marsh action against the Minidises in California not involve RBPW, but no judgment has been obtained. In such circumstances, it would be best to dismiss the interpleader action until such time as a legitimate fear of multiple claims arose. Were it otherwise, then this lawsuit would be held hostage to the California action. And, in that situation, the remedy of interpleader may be withheld. Id. § 1709. For all these reasons, the likely viability of Plaintiff's interpleader action against the Interpleader Defendants is so problematical that they should be deemed nominal parties.

As an additional basis for holding the Interpleader Defendants to be nominal parties, Defendants point to Plaintiff's own actions in the near identical action against Defendants in California. Defendants contend those actions show that even Plaintiff recognizes the claim involving Dousette and Marsh is not a viable one. Defendants find it significant that on October 17, 2005, Plaintiff consented to the dismissal of Dousette and Marsh from Plaintiff's California action when the jury verdict those two

-10-

obtained against the Minidises was set aside. At that time, Plaintiff requested that the royalty payments it had been depositing with the court be returned to RBPW. According to Defendants, this shows that even Plaintiff should recognize the instant interpleader action to be a sham. Moreover, Defendants show that Plaintiff in this action has not deposited any "interpleader" funds with the court. Defendants' argument is persuasive. The Court also notes that Plaintiff has not sought an entry of default against Defendants Dousette and Marsh, who have failed to file an answer in this case. All these circumstances indicate that there is an insufficient interpleader claim at this time.

In conclusion, Plaintiff's interpleader claim against Dousette and Marsh did not involve a sufficient viability or likelihood of multiple claims against royalty payments at the time of removal. Defendants Dousette and Marsh have an insufficient connection with the instant lawsuit. They will not be involved in any of the claims, nor have any interest in the contentions between the parties. As such, they are mere nominal parties or individuals without sufficient interest in this lawsuit. For these reasons, the fact that Dousette and Marsh failed to sign the Notice of Removal should not be allowed to impair the validity of the removal notice. Consequently, Plaintiff's motion to remand based on this alleged insufficiency should be denied.

## Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative to Transfer Venue Pursuant to 28 U.S.C. § 1404

Defendants request that the Court dismiss this action against all of them on the ground that the Court lacks in personam jurisdiction over them. In the alternative, they request that the Court transfer this case to the Central District of California pursuant to 28 U.S.C. § 1404(a) on the ground that this would be the most convenient forum for all parties. As will be seen, the Court likely lacks in personam jurisdiction over some Defendants and a forum selection clause as to one of them stipulates that all actions would be brought in the State of California. For this and other reasons, it will be recommended that this case be transferred to the Central District of California.

The Court will first start by analyzing the jurisdiction portion of Defendants' motion. When a defendant raises the issue of personal jurisdiction, the burden shifts to the plaintiff to establish such jurisdiction by a preponderance of the evidence. Mylan Laboratories, Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). Because Defendants are out-of-state residents, Plaintiff must use the state long-arm statute to obtain jurisdiction over Defendants. In such an instance, the first inquiry is to see whether the state statute satisfies the due process standards found in the Fourteenth Amendment of the United States Constitution. Ellicott Mach. Corp., Inc. v. John Holland Party, Ltd., 995 F.2d 474, 477 (4th Cir. 1993). Plaintiff points to N.C.G.S. § 1-75.4. That statute covers a number of categories, including jurisdiction

-12-

based on a local presence, local injury, and contract. It clearly encompasses acts based in Plaintiff's complaint concerning breach of contract, fraud, etc. This statute has previously been construed to reach the limits of constitutional due process. Therefore, the normal two-step process of determining whether the statute authorizes jurisdiction and then determining whether the exercise of such jurisdiction satisfies due process, collapses into a single inquiry, i.e., whether haling Defendants before a North Carolina court violates due process. <u>Christian Science Bd. of Directors of First Church of Christ, Scientist v. Nolan</u>, 259 F.3d 209, 215 (4th Cir. 2001).

The due process concerns mentioned above encompass the inquiry of whether a defendant has "'certain minimum contacts'" with the forum state "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 (1984)(quoting <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)). In order to establish minimum contacts, a plaintiff must show there to be a sufficient connection between the defendant in the forum so that it is "fair to require defense of the action in the forum." <u>Kulko v. Superior Court of California In and For City and County of San Francisco</u>, 436 U.S. 84, 91 (1978). These minimal contacts may not simply arise out of "unilateral activity of those who claim some relationship with a nonresident." <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958). Instead, a plaintiff must show the defendants have purposely availed themselves of

-13-

conducting activities within the forum state sufficient to invoke the benefits and protections of that state's laws. <u>Id.</u> The requirement that there be a purposeful availment serves to protect a defendant from being haled into a foreign court as a result of "random, isolated, or fortuitous" contacts. <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 774 (1984). Another way of describing the fairness element of the minimum contacts test is that it should appear that a defendant reasonably would anticipate being haled into a court as a result of his or her contacts. <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).

Minimum contacts may arise in two ways. The first is labeled "general jurisdiction" and requires a substantial amount of general contacts arising from continuous and systematic activities. <u>Helicopteros</u>, 446 U.S. at 415. The other basis for jurisdiction is denominated "specific jurisdiction." <u>First American First, Inc. v. National Ass'n of Bank Women</u>, 802 F.2d 1511, 1516 (4th Cir. 1986). This jurisdiction depends on whether or not a plaintiff's cause of action is related to or arises out of Defendants' contacts with the forum state. <u>Id.</u>

In the instant case, Plaintiff makes no argument, nor has it submitted any proof, that jurisdiction in this case could be based on the general jurisdiction prong of the minimum contacts test. That is, Plaintiff utterly fails to show that any of these Defendants have had continuous and systematic contact with North Carolina, aside from the matters mentioned in the complaint. Therefore, the Court will turn its attention to the specific

-14-

jurisdiction prong of the minimum contacts test. Because jurisdiction under this test arises out of Defendants' specific contacts with Plaintiff, the amount of contact to establish jurisdiction may be less than that required by the general jurisdiction test, although the ultimate test for jurisdiction remains, which is that it result in fairness to the defendants. Id.; Helicopteros, 466 U.S. at 414. In deciding specific jurisdiction, the Court examines the relationship or connection between the defendants, the forum, and the litigation. Burlington Industries, Inc. v. Yanoor Corp., 178 F. Supp. 2d 562, 567 (M.D.N.C. 2001). Nevertheless, even these contacts must be of sufficient, substantial quality or quantity so that jurisdiction could not be said to be based on some random, fortuitous, or attenuated event or activity. Id.

The Court will first examine whether it has jurisdiction over RBPW. Here, RBPW entered into a franchise contract with Plaintiff to be performed in the State of North Carolina. Defendant RBPW tries to make much of the fact that the contract negotiations took place in California and the final signing took place there. However, it has to admit that it had its officers telephone or e-mail or otherwise have contact with Plaintiff in North Carolina. It also cannot deny that the contract is being performed in North Carolina and that it received payments as a result of this. It appears clear that RBPW has more than minimal contacts with the State of North Carolina to support jurisdiction over it concerning the franchise contract with Plaintiff. With respect to the tort

-15-

claims, Plaintiff alleges that even though negotiations took place in California and misrepresentations were made there, it was intended that the misrepresentations be acted on in North Carolina, and thereafter Defendant continued the failure to disclose information.

While the signing of a contract alone may not automatically establish minimum contacts, the Court may look to prior negotiations, future contract consequences, the terms of the contract, and the parties' dealings in order to determine whether there is a sufficient amount of activity to satisfy the elemental fairness of minimum contacts. Burger King. Corp. v. Rudzewicz, 471 U.S. 462 (1985). Defendant RBPW relies on Helicopteros, 466 U.S. 408. There, one alleged basis for personal jurisdiction was that the defendant had negotiated and purchased helicopters, training, and equipment in Texas. The Supreme Court found the contacts were insufficient to require the purchaser to defend a lawsuit in Texas, especially since the purchases did not relate to the cause of action. However, in the instant case, Defendant RBPW was selling something, and such conduct is more nearly deemed active as opposed to being passive. Moreover, the sale does have a connection to the cause of action. Therefore, even though RBPW was first contacted by Plaintiff, it played a much more active role than the purchaser in Helicopteros, because it was selling a product to be used in North Carolina. In addition, RBPW knew at the time that there would be a substantial, continuous relationship between Plaintiff in North Carolina and RBPW because of these negotiations. As a

-16-

result, RBPW clearly has sufficient minimum contacts with this State to support jurisdiction here.

Defendant RBPW tries to distinguish <u>Vishay Intertechnology, Inc. v. Delta Intern. Corp.</u>, 696 F.2d 1062 (4th cir. 1982), relied on by Plaintiff, where the Fourth Circuit found that the fact that the defendant wrote three letters and initiated five telephone calls to a North Carolina manufacturer was sufficient to satisfy due process for tort claims. It argues that, unlike the defendant in <u>Vishay</u>, it did not initiate the contacts. But this ignores the fact that it actively entered into negotiations with the intent of establishing a franchise in North Carolina. Therefore, while <u>Vishay</u> may be distinguished from the instant case because of certain facts, the other important facts clearly support the application of the result in <u>Vishay</u> to the instant case.

Notwithstanding that this Court has jurisdiction over RBPW, that does not end the matter. The reason is that the Master Franchise Development Agreement has a forum selection clause. That clause provides that California law will govern any dispute arising out of the contract and that such disputes must be brought in a court of competent jurisdiction in Los Angeles County, California. This does not defeat personal jurisdiction, but the Court will consider it later with respect to that portion of Defendants' motion which seeks to transfer venue to California.

Next, the Court turns its attention to RBP, Inc. This is a RBPW franchise owner (like Plaintiff) that owns ten Red Brick Pizza outlets in California. It is a closely held California corporation

-17-

owned by the Minidises.  It has not had any contact with the State of North Carolina in any way.  Plaintiff admits that personal jurisdiction over RBP, Inc. is based solely on the action of other Defendants set out in paragraph six of the complaint where Plaintiff states that RBP, Inc. is a sham corporation.  In paragraph six, Plaintiff alleges that the Minidises may have deposited funds in RBP, Inc.  However, those acts were performed in California.  Contacts between related corporate entities are generally not imputed one to another.  Saudi v. Northrup Grumman Corp., 427 F.3d 271, 276-277 (4th Cir. 2005).  Essentially, Plaintiff would be requesting the Court to ignore the corporate existence of RBP, Inc.  It fails to state, however, any factual basis and legal authority for exercising jurisdiction over the entity.  And, because Plaintiff has the burden of establishing personal jurisdiction, the Court finds that it has failed in this duty.  However, rather than ultimately deciding that issue and dismissing RBP, Inc., the Court will recommend that the case be transferred to California.

The next issue is whether the Court has personal jurisdiction over Jim and Lynn Minidis.  Their only connection with North Carolina arises out of their actions as officers of RBPW. Nevertheless, the Court clearly has jurisdiction over Defendant Jim Minidis.  He was the individual who did the principal negotiations prior to the signing of the contract and allegedly sent false and misleading or inaccurate information to North Carolina to induce Plaintiff to sign the contract.  Defendant Jim Minidis argues that

his status as a corporate representative alone may not be the basis for exercising personal jurisdiction.  It is true that under North Carolina law an officer of a corporation is not personally liable for torts of an employee simply because of the corporate office.  Wolfe v. Wilmington Shipyard, Inc., 135 N.C. App. 661, 670, 522 S.E.2d 306, 312-313 (1999).  On the other hand, if an officer "actively participates" in a tort, he may be liable even though he was acting in his corporate capacity.  Wilson v. McLeod Oil Co., Inc., 327 N.C. 491, 518, 398 S.E.2d 586, 600 (1990).  In the instant case, the alleged facts support personal jurisdiction over Mr. Minidis.  For example, in ePlus Technology, Inc. v. Aboud, 313 F.3d 166, 176-177 (4th Cir. 2002), the court found personal jurisdiction over the principal of a Canadian corporation who provided false information or documents to corporations in Virginia with the intent that they rely on it.  The fact that this principal acted on behalf of the corporation did not insulate her from being haled into the Virginia court.  That same rule applies to the instant case.

While this Court has personal jurisdiction over Jim Minidis, the facts with respect to Lynn Minidis are extremely thin. Plaintiff claims that after the agreement, she may have had some communications and/or e-mails with Plaintiff.  However, these are not sufficiently set out for the Court to make a reasoned determination that they were connected to the fraud.  Again, it is Plaintiff who has the burden of proving personal jurisdiction and it has not done so, except in the most conclusory terms.  Because

-19-

of the problematic nature of this Court's jurisdiction over Ms.
Minidis, it will be recommended that, rather than dismissing Ms.
Minidis, the case be transferred, thereby avoiding having to
ultimately decide an extremely close constitutional issue.

Personal jurisdiction over Defendant Drysdale is also very
uncertain with respect to the cause of the action alleged in the
complaint. Drysdale, through his affidavit, shows that he did
perform legal work for Plaintiff with respect to revising a
circular at the end of December 2002. The mere fact that Drysdale
performed the legal work in California does not detract from the
fact that he actually transacted business in North Carolina for a
North Carolina corporation, and would be subject to this Court's
jurisdiction for actions arising out of that work. See English &
Smith v. Metzger, 901 F.2d 36, 39 (4th Cir. 1990). However,
Drysdale's argument is that Plaintiff is not suing him because of
the legal work in connection with preparing franchise offering
circulars. And this seems to be true. Unfortunately, Plaintiff
does not address this distinction. Instead, he states that because
Drysdale admits receiving money from him, he does not contest
jurisdiction. That, of course, is not correct. Defendant Drysdale
does contest personal jurisdiction over him.

Plaintiff's president, Britt Weaver, states in an affidavit
that he hired Drysdale "to represent Plaintiff and protect its
interests in connection with Plaintiff's responsibilities as a
Master Developer for RBPW." (Weaver Aff. ¶ 9.) This, of course,
conflicts with Mr. Drysdale's affidavit that Plaintiff only hired

-20-

him in connection with revising a franchise offering circular. Drysdale's affidavit provides further credence to his assertion because of the limited fee and the timing of the payment. Weaver's affidavit only makes a conclusory assertion and fails to explain why, if Drysdale was Plaintiff's retained attorney for a wide variety of matters that there was only a one-time fee of $750.00 paid in connection with the revising of offering circulars. Again, Plaintiff has the responsibility for proving personal jurisdiction and the Court finds that this wholly conclusory assertion by Plaintiff made by Weaver does not provide sufficient explanation in light of Drysdale's specific explanation of the limited nature of his legal services. On the factual basis before the Court, it cannot be said that Plaintiff has met the burden of establishing this Court's personal jurisdiction over Defendant Drysdale. But, again, like with Defendant Lynn Minidis, that ultimate question need not be answered inasmuch as Plaintiff's proof of personal jurisdiction over Defendant Drysdale is so tenuous that it supplies a reason for transferring the case to the Central District of California, rather than dismissing it or deciding a close constitutional issue.

The Court now turns its attention to Defendants' motion to transfer this case to the Central District of California pursuant to 28 U.S.C. § 1404(a). In a situation where a case or part of it could be dismissed for lack of personal jurisdiction, the Court should consider the alternative of transferring the case to a district where it could have been originally brought. <u>Chung v.</u>

NANA Development Corp., 783 F.2d 1124, 1130 (4th Cir. 1986)(remand for consideration of transfer after a finding of no personal jurisdiction). Of course, in deciding whether a motion to transfer should be granted, the Court must first find that the action could have been originally brought in the transferee court. Cable-La, Inc. v. Williams Communications, Inc., 104 F. Supp. 2d 569, 574 (M.D.N.C. 1999). Defendants point out that the case clearly could have been brought in the Central District of California based on diversity of citizenship pursuant to 28 U.S.C. § 1332. At least one Defendant resides in the Central District and all Defendants reside in California. See 28 U.S.C. § 1391(a). Plaintiff does not dispute this contention.

In considering a motion to transfer, the Court should consider the following factors:

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws." Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 527 (M.D.N.C. 1996)(citing Datasouth Computer Corp. v. Three Dimensional Techs., Inc., 719 F. Supp. 446, 450-51 (W.D.N.C. 1989)).

Republic Mortg. Ins. Co. v. Brightware, Inc., 35 F. Supp. 2d 482 (M.D.N.C. 1999).

-22-

The first factor normally weighs heavily in the analysis in support of Plaintiff's original choice of forum. However, that weight is only proportionate to the connection between the cause of action alleged and the chosen forum. <u>Parham v. Weave Corp.</u>, 323 F. Supp. 2d 670, 674 (M.D.N.C. 2004). In the instant case, there is a strong connection between North Carolina and the cause of action. Plaintiff is alleging breach of contract and misrepresentations with respect to entering into the contract to be performed in North Carolina. However, there is not insubstantial connection to California. Because of the forum selection clause, California law may be involved. Also, Plaintiff has deliberately included an interpleader action involving Mary Dousette and Michael Marsh in connection with their lawsuit against the Minidises. And, Plaintiff has added RBP, Inc., Lynn Minidis, and Dan Drysdale. These individuals have little or no personal contacts with the State of North Carolina. Were the case not transferred, some of the Defendants would be dismissed. Therefore, while Plaintiff's original choice of forum should be given deference, there are strong countervailing factors which reduce that importance.

The second factor, which involves access to proof, weighs in favor of California since most of the witnesses and the evidence will be located in that State. And, in that regard, there would be greater chance of compulsory process for the attendance of unwilling witnesses.

The other factors do not weigh heavily in favor of either North Carolina or California. In conclusion, based on the tenuous

-23-

likelihood of personal jurisdiction over some of the Defendants and the fact that most of the witnesses and evidence will be located in California, along with the fact that the Interpleader Defendants are located in California, the Court finds that these factors outweigh Plaintiff's original choice of forum. However, were there any doubt in the matter, such is erased by the fact that in the instant case, Plaintiff and RBPW have a forum selection clause in their contract which requires disputes to be resolved by California law in California courts. While it is true, as Plaintiff points out, that only RBPW can claim benefit of that clause, that does not diminish its importance as a factor supporting transfer.

Forum selection clauses are prima facie valid and enjoy a presumption of enforceability. <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1 (1972); <u>Allen v. Lloyd's of London</u>, 94 F.3d 923, 928 (4th Cir. 1996). Such a clause shifts the burden from the party seeking the transfer to the party opposing it. <u>Allen</u>, 94 F.3d at 928; <u>Cable-La, Inc.</u>, 104 F. Supp. 2d at 574-575. Furthermore, it has been said that this burden requires the party opposing a transfer to show why enforcing it would be unreasonable or unjust. <u>Id.</u> Plaintiff responds that its allegation that the contract was induced by fraud serves as such exceptional evidence. The mere allegation is insufficient. Moreover, what would be required would be for Plaintiff to show that the forum selection clause itself was the product of fraud or coercion. <u>Id.</u> This, Plaintiff has failed to do. Furthermore, Defendants point out that Blue Mako has already acknowledged an ability and willingness to litigate in

-24-

California by bringing this identical cause of action there previously.

Plaintiff also asserts that the forum selection clause contravenes N.C.G.S. § 22B-3, which states:

> Except as otherwise provided in this section, any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable. This prohibition shall not apply to non-consumer loan transactions or to any action or arbitration of a dispute that is commenced in another state pursuant to a forum selection provision with the consent of all parties to the contract at the time that the dispute arises.

Defendants' response is two-fold. First, they show that the contract was finalized in California and not North Carolina, so that California law applies to this case. Second, they point out that the validity of a forum selection clause is governed by federal law, not state law. Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 32 (1988). Therefore, a state statute, such as the one named here, cannot by itself invalidate a forum selection clause which is sought to be enforced in a federal court. Cable-La, Inc., 104 F. Supp. 2d at 576. The forum selection clause "should receive neither dispositive consideration . . . nor no consideration . . ., but rather the consideration for which Congress provided in § 1404(a)." Stewart, 487 U.S. at 31. That is, the clause is a relevant factor for consideration. Id. As for the North Carolina statute restricting the application of forum selection clauses, it at most is only another factor for the Court to consider when ruling on a motion to transfer. Cable-La, Inc.,

-25-

104 F. Supp. 2d at 576. While the forum selection clause may be only one of a number of relevant factors for consideration, it provides further inducement for a finding that the case should be transferred to the Central District of California, and it will be so recommended.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion to remand (docket no. 15) be denied.

**IT IS FURTHER RECOMMENDED** that Defendants' motion to dismiss this action for lack of personal jurisdiction (docket no. 5) be denied as to Defendants Jim Minidis and Red Brick Pizza Worldwide, Inc., and that it be denied for being moot as to the other Defendants because, in the alternative,

**IT IS FURTHER RECOMMENDED** that this case be transferred pursuant to 28 U.S.C. § 1404 to the Central District of California.

_____
United States Magistrate Judge

December 21, 2006